IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DIONTE LAMAR STALLWORTH,
     Petitioner,

vs.                            Case No.:  3:17cv937/MCR/EMT

MARK S. INCH,
     Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's amended petition for writ of habeas corpus and supporting memorandum, filed pursuant to 28 U.S.C. § 2254 (ECF Nos. 5, 6).  Respondent filed an answer and relevant portions of the state court record (ECF No. 27).  Petitioner filed a reply (ECF No. 31).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues presented by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is

further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.     BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 27).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2011-CF-417, with one count of attempted armed kidnapping with a weapon (Count 1), one count of aggravated assault by threat with a firearm (Count 2), and one count of felony failure to appear (Count 3) (Ex. B1 at 3).  On August 17, 2011, a jury trial was held on Counts 1 and 2; Count 3 was severed for trial (Ex. B2 at 106–200, Ex. B3 at 201–364).  At the conclusion of trial, the jury found Petitioner guilty of attempted armed kidnapping as charged, with specific findings that Petitioner carried or used a weapon, actually possessed a firearm, and discharged a firearm during commission of the offense (Ex. B1 at 36–37).  The jury also found Petitioner guilty of aggravated assault as charged, with specific findings that he carried and actually possessed a firearm, and discharged a firearm during commission of the offense (*id.*).  On September 28,

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 27).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

2011, the court sentenced Petitioner to concurrent mandatory minimum terms of twenty (20) years in prison, with jail credit of 137 days (*id.* at 41–84). The State filed a nolle prosequi on Count 3 on September 30, 2011 (*id.* at 87).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D11-5564 (Ex. B4). The First DCA affirmed the judgment per curiam without written opinion on April 17, 2013 (Ex. B7). *Stallworth v. State*, 110 So. 3d 445 (Fla. 1st DCA 2013) (Table). The mandate issued May 3, 2013 (Ex. B8). On June 5, 2013, the First DCA denied Petitioner's motion for rehearing and/or written opinion (Ex. B10).

On October 30, 2013, Petitioner filed a motion for post-conviction relief and supporting memorandum in the state circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. C1 at 96–113). The court granted a limited evidentiary hearing on two of Petitioner's five claims (Grounds Two and Four), and appointed counsel for Petitioner (*id.* at 120–21). At the commencement of the evidentiary hearing on March 17, 2015, Petitioner's counsel announced they were abandoning Ground Four, and would proceed only on Ground Two (*id.* at 136–59). On June 30, 2015, the circuit court issued an order denying Petitioner's Rule 3.850 motion (*id.* at 160–65). Petitioner appealed the decision to the First DCA, Case No. 1D15-3657 (Ex. C2). The First DCA affirmed the lower court's decision per curiam

without written opinion on June 21, 2016 (Ex. C5).  *Stallworth v. State*, 193 So. 3d 891 (Fla. 1st DCA 2016) (Table).  The mandate issued July 19, 2016 (Ex. C6).

On August 2, 2016, Petitioner filed a "Motion for Evidentiary Hearing Alleging Extraordinary Circumstances" in the state circuit court (Ex. D1 at 1–4). The court summarily denied the motion on January 31, 2017 (*id.* at 10–11). Petitioner appealed the decision to the First DCA, Case No. 1D17-0843 (Ex. D2). The First DCA affirmed the lower court's decision per curiam without written opinion on August 25, 2017 (Ex. D4).  *Stallworth v. State*, 232 So. 3d 987 (Fla. 1st DCA 2017) (Table).  The mandate issued September 22, 2017 (Ex. D5).

Petitioner filed the instant federal habeas action on December 19, 2017 (ECF No. 1).

II.   STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254.  Section 2254(d) provides, in relevant part:

> **(d)**  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > **(1)**  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court

decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)). If the state court decision is contrary to clearly

established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam). In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, *supra*, at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g.*, *Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by the AEDPA, "conclude the decision was unreasonable or that the factual premise

was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *See Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit has declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claim. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner exhaust available state court remedies, *see* 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, 513 U.S. at 365–66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277–78.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See Bailey v. Nagle*, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See Coleman v. Thompson*, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts.");

*Chambers v. Thompson*, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  *Bailey*, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar.  *Id.*

A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question.  *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The federal court "lacks jurisdiction to entertain a federal claim on review of a state court judgment, if that judgment rests on a state law ground that is both independent of the merits of the federal claim and an adequate basis for the court's decision."  *Foster v. Chatman*, — U.S. —, 136 S. Ct. 1737, 1745, 195 L. Ed.

2d 1 (2016) (internal quotation marks and citation omitted). Even where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994) (citing *Harris*, 489 U.S. at 264 n.10).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim. Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. *Id.* Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default, the petitioner must show cause for the default and prejudice resulting therefrom, or that the federal court's failure to reach the merits of the claim would result in a fundamental miscarriage of justice. *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment,

whether it be governmental interference or the reasonable unavailability of the

factual basis for the claim, must have prevented petitioner from raising the claim."

*McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991)

(quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397

(1986)).  To satisfy the miscarriage of justice exception, the petitioner must show

that "a constitutional violation has probably resulted in the conviction of one who is

actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d

808 (1995).

     Within this framework, the court will review Petitioner's claims.

IV.   PETITIONER'S CLAIMS

    A.   Ground One:  "Ineffective assistance of counsel for failing to object to State's recall of victim to rebut the testimony of defense witness Jasper Hurd. Petitioner claims counsel was deficient because he objected on an incorrect basis."

    Ground Three:  "Ineffective assistance of counsel (trial) for failing to object to verdict form and failing to request a special interrogatory be added for the jury to deliberate and find that the discharge was intentional."

    Ground Four:  "Ineffective assistance of counsel for failing to investigate and call witness Ricky Henderson to testify at trial."[2]

---

[2] For organizational purposes, the court is consolidating its discussion of Grounds One, Three, and Four.

Case No.:  3:17cv937/MCR/EMT

In Ground One, Petitioner contends his trial counsel was deficient for failing to properly object when the State recalled the victim to rebut the testimony of defense witness Jasper Hurd (ECF No. 5 at 5, 15–18).[3]  Petitioner acknowledges defense counsel objected to the rebuttal testimony, but Petitioner contends counsel objected on the wrong grounds (*id.*).  Petitioner also contends defense counsel should have requested a *Richardson*[4] hearing, because the victim's rebuttal testimony had not been disclosed to the defense (*id.*).  Petitioner further alleges that if defense counsel had deposed the victim and Jasper Hurd, counsel would have avoided "opening the door" to the victim's rebuttal testimony (*id.*).  Petitioner contends absent counsel's errors, the outcome of trial would have been different (*id.*).

In Ground Three, Petitioner contends the mandatory-minimum provision of his sentences was not appropriate absent a jury finding that the discharge of the firearm was intentional (ECF No. 5 at 8, 21–23).  Petitioner contends defense

---

[3] When referencing the parties' pleadings, the court refers to the page numbers automatically assigned by the court's electronic filing system, rather than the page numbers of the original documents.

[4] In *Richardson v. State*, 246 So. 2d 771 (Fla. 1971) he Florida Supreme Court established a state rule of procedure that if a party fails to comply with a discovery rule, the court must conduct an inquiry into the circumstances of the violation.  As described by the Florida Supreme Court in *Delhall v. State*, 95 So. 3d 134 (Fla. 2012), *Richardson* held that where a discovery violation occurs, "the trial court must conduct an inquiry as to whether the violation:  (1) was willful or inadvertent; (2) was substantial or trivial; and (3) had a prejudicial effect on the aggrieved party's trial preparation."  *Delhall* at 160 (citing *Richardson*, 246 So. 2d at 774–75).

counsel should have objected to the verdict form and requested a special interrogatory requiring the jury to find whether the discharge was intentional (*id.*).

In Ground Four, Petitioner contends defense counsel should have presented testimony from Ricky Henderson (ECF No. 5 at 10, 24–27). Petitioner acknowledges that on the morning of trial, he "reluctantly agreed" to proceed without Mr. Henderson's testimony, but Petitioner asserts his agreement was based upon defense counsel's misadvice (*id.*). Petitioner contends absent counsel's failure to present Henderson's testimony, and counsel's misadvice, there is a reasonable probability the result of trial would have been different (*id.*).

Respondent asserts an exhaustion defense as to these three claims (ECF No. 27 at 8–11). Respondent contends Petitioner presented the claims in his Rule 3.850 motion, but he abandoned Ground Four in the circuit court proceedings, and he abandoned Grounds One and Three in the post-conviction appeal (*id.*).

In Petitioner's reply, he insists he did not abandon any of his claims; therefore, they are not procedurally barred from federal review (*see* ECF No. 31 at 1–6). Petitioner additionally contends this court should review Ground Four (i.e., trial counsel was ineffective for failing to call Ricky Henderson as a defense witness) due to "extraordinary circumstances" (*id.*).

The Florida Rules of Appellate Procedure provide that in a case where a movant's Rule 3.850 motion is denied after an evidentiary hearing was held on one or more claims, as was the case here, a movant wishing to appeal the denial of his motion must file an initial brief.  *See* Fla. R. App. P. 9.141(b)(3).  The movant must present argument on all issues for which he seeks appellate review in his initial brief, regardless of whether the claim was summarily denied or litigated at the evidentiary hearing.  *See Kelley v. State*, 109 So. 3d 811, 812 n.1 (Fla. 1st DCA 2013); *Prince v. State*, 40 So. 3d 11 (Fla. 4th DCA 2010); *Pennington v. State*, 34 So. 3d 151, 153 n.1 (Fla. 1st DCA 2010) (briefing is required in appeal from non-summary denial of Rule 3.850 motion); *Hammond v. State*, 34 So. 3d 58 (Fla. 4th DCA 2010) (claim for which appellant did not present argument, or for which he provided only conclusory argument, was insufficiently presented for appellate review, regardless of whether claim was among those claims litigated at evidentiary hearing or among those claims summarily denied by trial court); *Williams v. State*, 24 So. 3d 1252 (Fla. 1st DCA 2009) (where appellant received evidentiary hearing on some of his post-conviction claims and others were summarily denied, appellate court would review only those summarily denied claims which movant argued in appellate brief).

The Florida procedural rule deeming as waived or abandoned those claims for which an appellant has not presented any argument in his initial brief, even when the

post-conviction evidentiary hearing was limited in scope to some but not all post-conviction claims and the appellant's insufficiently presented claims were summarily denied by the trial court, is a firmly established and regularly followed procedural rule for purposes of federal habeas. *See, e.g.*, *Granberry v. Tucker*, No. 5:10cv129/RH/EMT, 2012 WL 2891245, at *26 (N.D. Fla. May 4, 2012), *Report and Recommendation Adopted*, 2012 WL 2890780 (N.D. Fla. July 14, 2012) (nonbinding but recognized as persuasive authority); *Daniels v. Tucker*, No. 5:09cv328/RS/EMT, 2011 WL 7153921, at *18 (N.D. Fla. Nov. 22, 2011), *Report and Recommendation Adopted*, 2012 WL 379590 (N.D. Fla. Feb. 3, 2012); *Stoudmire v. Tucker*, No. 3:09cv48/MCR/EMT, 2011 WL 5426239, at *9–11 (N.D. Fla. Aug. 30, 2011), *Report and Recommendation Adopted*, 2011 WL 5442091 (N.D. Fla. Nov. 9, 2011); *Green v. McNeil*, No. 1:09cv204/MMP/GRJ, 2011 WL 2790167, at *7 (N.D. Fla. June 22, 2011), *Report and Recommendation Adopted*, 2011 WL 2790180 (N.D. Fla. July 15, 2011); *Curry v. Buss*, No. 3:08cv539/LAC/EMT, 2011 WL 2174038 (N.D. Fla. Apr. 26, 2011), *Report and Recommendation Adopt*ed, 2011 WL 2149544 (N.D. Fla. June 1, 2011).

Here, Petitioner filed an initial brief in the Rule 3.850 appeal, but he did not present any argument on Grounds One, Three, or Four (*see* Ex. C2), and thus did not properly exhaust them in the state courts. Moreover, Petitioner cannot now take a

second appeal from the denial of his Rule 3.850 motion to attempt to successfully exhaust Grounds One, Three, and Four. Therefore, Grounds One, Three, and Four are procedurally defaulted.

Petitioner has not alleged cause for his failure to present Grounds One, Three, and Four in his post-conviction appellate brief. However, the court construes Petitioner's "extraordinary circumstance" argument as an attempt to satisfy the miscarriage of justice exception to the procedural bar by arguing that he would not have been convicted if the jury had heard Ricky Henderson's testimony.

As previously discussed, to satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at 327. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Id.* Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Petitioner has not proffered any reliable evidence, such as an affidavit from Mr. Henderson, to support his self-serving allegation that Henderson would have testified at Petitioner's trial, let alone that Henderson would have testified favorably to Petitioner's defense. In the absence of any such evidence, Petitioner cannot satisfy the "actual innocence" exception to the procedural bar. Petitioner is thus not entitled to federal review of the claims asserted in Grounds One, Three, and Four.

B.    Ground Two: "Ineffective assistance of trial counsel for failing to investigate Petitioner's competency. Defendant claims he was unable to concentrate, comprehend, or make decisions and participate in his defense, therefore, he was not competent to stand trial."

Petitioner alleges on August 15, 2011, prior to the commencement of jury selection he advised defense counsel he had recently been "admitted/seen" by a doctor at Lakeview Center, and was under the care of a psychiatrist and taking psychotropic medications (ECF No. 5 at 6, 19–20). Petitioner alleges he informed defense counsel he was suffering from severe depression and "high anxiety," and that the medications "made his mind vacilatate [sic] and comprehension difficult to impossible" (*id.* at 19). Petitioner alleges he asked counsel to advise the court of these circumstances, request a continuance "until Defendant was able to concentrate, comprehend, make decisions, and participate in his defense," and consult with his doctor (*id.*). Petitioner acknowledges defense counsel advised the court of a

potential competency issue and requested a continuance, but the court denied the continuance (*id.*).  Petitioner contends defense counsel should have investigated his competency during the two days between jury selection and the commencement of trial two days later (*id.* at 19–20).  Petitioner contends if defense counsel had investigated his competency, counsel would have discovered grounds to make a motion for a competency evaluation (*id.* at 20).  Petitioner alleges a motion by defense counsel would have resulted in the court's ordering a competency evaluation and finding that he was not competent to proceed (*id.*).

Respondent concedes this claim "appears to be exhausted" (ECF No. 27 at 9–10).  Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 22–27).

1.   Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under *Strickland*, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at

687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

The focus of inquiry under the performance prong of *Strickland* is whether counsel's assistance was reasonable considering all the circumstances and under prevailing professional norms."  *Strickland*, 466 U.S. at 688–89, 691.  "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." *Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting *Chandler*, 218 F.3d at 1317).   Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Michael*, 430 F.3d at 1320 (quoting *Putman v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001)).  "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can

be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." *Jones*, 436 F.3d at 1293 (citing *Strickland*, 466 U.S. at 690); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

As to the prejudice prong of the *Strickland* standard, Petitioner's burden of demonstrating prejudice is high. *See Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). To establish prejudice, Petitioner must show "that every fair-minded jurist would conclude 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Jones v. GDCP Warden*, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome," not that counsel's conduct more likely than not altered the outcome of the proceeding. *Id.* (citation omitted). And Petitioner must show that the likelihood of a different result is substantial, not just conceivable. *Williamson v. Fla. Dep't of Corr.*, 805 F.3d 1009, 1016 (11th Cir. 2015) (citing *Richter*, 562 U.S. at 112). "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder

would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. The prejudice assessment does "not depend on the idiosyncracies [sic] of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. *Id.* at 695.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105.

As the court explained in *Richter*:

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689–690, 104 S. Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one.
> . . . .
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at

689, 104 S. Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333 n.7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*], 556 U.S. [111,] 123, 129 S. Ct. [1411,] 1420[, 173 L. Ed. 2d 251 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 123, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105.

The Due Process Clause of the Fourteenth Amendment prohibits states from trying or convicting a defendant who is mentally incompetent. *See Pate v. Robinson*, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966). The Supreme Court set the standard to be used in determining mental competency as whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (per curiam); *Drope v. Missouri*, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); *see also Indiana v. Edwards*, 554 U.S. 164, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008).

In *Drope*, the Court elaborated as follows:

The import of our decision in *Pate v. Robinson* is that evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

*Drope*, 420 U.S. at 180.

The Eleventh Circuit has applied and expounded upon these standards. "[N]either low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) (citation omitted). A *Pate* analysis must focus on "what the trial court did in light of what it then knew, [and] whether objective facts known to the trial court were sufficient to raise a bona fide doubt as to the defendant's competency." *Fallada v. Dugger*, 819 F.2d 1564, 1568 (11th Cir. 1987) (citations omitted). A petitioner who makes a substantive competency claim, contending that he was convicted while mentally incompetent, "is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence." *James v. Singletary*, 957 F.2d 1562, 1571 (11th Cir. 1992). This standard is in contrast to a petitioner who makes a procedural

competency claim alleging that the trial court failed to hold a competency hearing after his competency was put at issue.  To prevail on a procedural competency claim, "a petitioner must establish that the state trial judge ignored facts raising a 'bona fide doubt' regarding the petitioner's competency to stand trial." *Id.* at 1572 n.15 (citing *Fallada*, 819 F.2d at 1568).   A petitioner who presents "clear and convincing evidence" which creates a "real, substantial and legitimate doubt" as to his competence is entitled to an evidentiary hearing on his substantive competency claim. *Medina*, 59 F.3d at 1106 (quoting *James*, 957 F.2d at 1573).  However, the standard of proof is high, and "the facts must positively, unequivocally, and clearly generate the legitimate doubt." *Card v. Singletary*, 981 F.2d 481, 484 (11th Cir. 1992) (quotations omitted).   Relevant information may include evidence of a defendant's irrational behavior, demeanor at trial, or prior medical opinion. *See Watts v. Singletary*, 87 F.3d 1282, 1287 (11th Cir. 1996).

A lifelong history of mental illness and emotional problems does not demonstrate incompetency without a specific showing of how these difficulties generated a substantial doubt as to the defendant's competency at the time in question. *See Medina*, 59 F.3d at 1106; *Card,* 981 F.2d. at 484.  Similarly, the fact that the accused is undergoing treatment with psychiatric drugs, while relevant, does not alone prove incompetence. *See Sheley v. Singletary*, 955 F.2d 1434, 1438–39

(11th Cir. 1992).  In order to establish incompetence, evidence must establish that the drugs affected the accused to the point that he could not effectively consult with his attorney and could not understand the proceedings.  *See id.* at 1439.

### 2.   Federal Review of State Court Decision

Petitioner presented Ground Two as Claim Two of his Rule 3.850 motion (Ex. C1 at 102–03).  The circuit court appointed counsel for Petitioner and held an evidentiary hearing (*id.* at 120–21, 136–59).

Petitioner's medical records from Lakeview Center, including a Recorded Services/Progress Note Report and a Psychological Assessment, were admitted into evidence at the evidentiary hearing (Ex. C1 at 122–34).  Those records reflect that Petitioner went to Lakeview Center, Inc. on August 3, 2011.  Petitioner was assessed by Michael C. Franklin, and the assessment was reviewed by Janey M. Garrett, MS, LMHC.

According to the Psychological Assessment, Petitioner reported that his attorney told him to "get some help" from Lakeview.  Petitioner provided the following reasons for seeking mental health assistance:

> . . . Client reports that he is currently under a large amount of stress because he is refusing to tell the truth about recent incident involving him with an assault charge.  Client reports because of dealing with this stress he reports being anxious, depressed, and he reports being unable to fall asleep.  Client reports that he is facing a sentence

of 20 years in prison because of this assault charge.  Client reports feeling guilty because he believes that he has not lived the life that his grandfather would have liked for him to live.  Client reports that his grandfather passed away when he was in Jail and this is the reason for his guilt.

. . . Client reports that he has stayed up for the past three days obsessing about the problem and continuously thinking about his options of telling the truth or not telling the truth and facing 20 years in prison or facing death if he was caught "snitching."

. . . Client reports that he has increased his marijuana use to smoking 5 blunts daily to help calm his nerves.  Client also reports that he has increased his tobacco smoking as well.

. . . Client reports that when he sits and ponders on having to face these assault charges with the law increases [sic] his anxiety and makes his depression and his substance abuse worse.

. . . Clients reports that if he tells the truth about the assault then he knows he will be shot and killed.  The client reports that he feels he is in a "no win situation."

. . . The client reports he would like hurting himself when he makes poor choices, however, the client reports that he does not think about suicide nor does he think about killing himself.

(Ex. C1 at 125–26).

According to the Psychological Assessment, Petitioner reported he had not been sleeping due to dreams/visions of seeing the devil (Ex. C1 at 127).  He reported he had used drugs, stolen cars, sold drugs, and committed many criminal acts (*id.* at 126).  Petitioner reported he was "addicted to making the quick money," and this

addiction controlled him and kept him in a cycle of using and selling drugs (*id.* at 129).    Petitioner reported he was charged with felony assault (*id.* at 130).    He reported he did not commit the crime and was afraid to identify the perpetrator because he would be killed (*id.*).    Petitioner reported that his barriers to mental wellness were "stress from the court, probation officers, my life choices, drugs" (*id.*).

The Lakeview therapist diagnosed Petitioner with Major Depressive Disorder, Cannabis Dependence, Cannabis-Induced Psychotic Disorder with Hallucinations, and Antisocial Personality Disorder (Ex. C1 at 131).    The therapist noted Petitioner blamed external factors for his present circumstances (*id.* at 133).    The therapist observed that Petitioner was contemplating change "as evidenced by the client knowing things needing [sic] to change however he has yet to take action at this time" (*id.*).    The therapist opined:

> The client needs to have Substance Induced Psychosis ruled out because the client reports to having vivid dreams and hallucinations as evidenced by seeing and hearing the devil.    At this time this therapist is unable to determine if the psychosis is being determined by the client's marijuana use since the client has given history of continued as well as increased use.

(Ex. C1 at 133).    The therapist established the following Clinical Goals/Focus of Treatment:

> Engage in outpatient treatment in order to abstain from all substances. Upon abstaining from substances the client will be referred to

psychiatry for possible medication management as well as case
management.

(Ex. C1 at 133).

The therapist made the following recommendations:

Client is referred to Adult Intensive Outpatient Program at the
present time.  If the client is unable to abstain from substance use then
the client will be referred to the Adult Residential Treatment Inpatient
Program (ART).  It will also be recommended that the client be
considered for individual therapy to help the client with his
abandonment issues revolving around being abandoned by his mother
at the age of 4 months old and then he was abandoned by his
grandmother at the age of 13.  Client is recommended to complete the
Intensive Outpatient Program in addition to attending 90 Narcotics
Anonymous Meetings in 90 days.  It is recommended that the client be
given random urinalysis in order to determine if the client is able to
abstain from substance use.  Upon the client abstaining from substance
use and is [sic] able to remain mentally stable then the client will be
given a vocational rehabilitation referral to assist the client with finding
a job which the client has recommended assistance from this agency.

Dionte is in need of mental health and substance related services.

(Ex. C1 at 134).

Petitioner testified at the post-conviction evidentiary hearing (Ex. C1 at 139–

43).  He testified that on the same day he went to Lakeview Center, he had a court

appearance or "docket day," but he did not appear in court.  Petitioner testified he

did not meet with his trial counsel, Attorney Ted Stokes, during the 12-day period

between the "docket day" on August 3, 2011, and the day of jury selection on August

15, 2011.  Petitioner testified he recalled speaking with Attorney Stokes on the morning of jury selection.  He testified he told Stokes about "what I had going on at Lakeview," but was unable to articulate to Stokes "all that he had going on" in relation to his criminal case.  Petitioner testified he was prescribed medication by Lakeview and had been taking it, but he did not take it on the day of jury selection because he was in custody.  Petitioner testified he provided Attorney Stokes with his prescription, but he did not provide Stokes with the Lakeview medical records.  Petitioner testified that his lack of medication on the day of jury selection made "everything real confusing."  When asked whether he understood what was happening on the day of jury selection, Petitioner responded, "[E]verything was just confusing."  When asked whether he understood he was going to select a jury that day and go to trial that week, Petitioner responded, "No, Ma'am.  I was confused the whole time."  Petitioner testified that Attorney Stokes presented the issue to the court, but "things didn't go the way that he wanted them to go."

Attorney Stokes testified that at the time he represented Petitioner, he had been practicing criminal law for 40 years and had participated in at least 250 jury trials (Ex. C1 at 146–53).  Attorney Stokes testified he met Petitioner in person in his (Stokes') office on the day prior to the "docket day" on August 3, 2011 (when Petitioner failed to appear in court and instead went to Lakeview Center).  Attorney

Stokes testified that during that meeting, he did not observe any indication that Petitioner was suffering from a mental disorder or experiencing any confusion. Stokes testified Petitioner seemed engaged when they discussed his defense strategy. Attorney Stokes testified that at that time, there was no plea offer on the table, and they had no alternative but to go to trial, considering the severity of the charges. Stokes testified he did not become aware that Petitioner had gone to Lakeview for a psychiatric issue until the next court appearance, on August 15, 2011. Stokes testified that on that day, Petitioner's mother gave him a document from Lakeview, which stated, "Client came in for his initial appointment. Very stressed. And he was signed up for groups." Stokes testified Petitioner told him Lakeview prescribed psychotropic medication, but Petitioner did not indicate the specific medication. Attorney Stokes testified Lakeview professionals would have admitted Petitioner for inpatient treatment if he had a serious mental disorder.

Attorney Stokes testified that when the parties appeared for jury selection on August 15, 2011, he requested a continuance of trial to further investigate Petitioner's mental health and to locate a defense witness:

> Q [by Petitioner's post-conviction counsel]. Did you ever make attempts to get more documentation from Lakeview concerning his stay there?

A.  It was a really short time frame.  Everything was moving pretty quickly.  The trial was on the—we picked the jury on the 15th and tried it, like, the 17th, so there really wasn't a time [sic] to get an evaluation.  And Judge Rasmussen basically had the same policy as Judge Bell does, who ended up trying it, you get—you get one continuance and the next time it's going.  And so we—there was really no time to go into that.

Q.  So it was basically the discretion of the Court whether you were going to get another continuance to explore this—

A.  You were not going to get it.  I mean, he was really good about giving the first continuance, and then after that, it was going to trial.  And I was just substituted in at the first docket day, and then the next docket day it was going. That was his policy.

Q.  So, I understand the policy.  Did you ever try to ask for a continuance from Judge Rasmussen?

A.  Yeah.  There's a motion to continue in the file.  And it was—let's see.

Q.  I remember reading that from the transcript, Mr. Stokes.

And then you asked Judge Bell for the continuance for the same reason, to have your client evaluated, correct?

A.  Right.

Q.  And what happened?

A.  Denied.

(Ex. C1 at 149–50).

Attorney Stokes testified he did not recall that Petitioner seemed confused on the day of jury selection (Ex. C1 at 151–53). Stokes testified that if Petitioner had appeared confused or lacked the ability to comprehend and understand the proceedings, Stokes would have alerted the judge. Attorney Stokes testified Petitioner never told him that other people had committed the crimes. Stokes testified Petitioner told him he was in Mobile, Alabama, with Shekena Knott at the time of the crimes, and Petitioner did not appear confused when he described this alibi.

A transcript of Attorney Stokes' request for a continuance on the day of jury selection on August 15, 2011, is part of the state post-conviction court record (Ex. C1 at 169–73). According to the transcript, Stokes informed the court that during his meeting with Petitioner the day before the August 3, 2011 "docket day," Petitioner informed him of two alibi witnesses. Stokes informed the court that Petitioner brought one of the witnesses with him to the meeting (Shekena Knott), and Petitioner told Stokes he would bring the other alibi witness to "docket day" the next day (August 3, 2011). Stokes told the court that Petitioner did not appear at that "docket day" and instead went to Lakeview for "some mental disorders." Stokes presented the possible competency issues as follows:

MR. STOKES: Judge, this morning I was presented with some evidence that leads me to believe there may be a competency issue. The date that he failed to appear, he presented himself at Lakeview Center, I guess it's the CSU unit; I have evidence here of that. He was checked for psychiatric problems which makes me believe that—

THE COURT: Well, did they admit him or do anything to him?

MR. STOKES: How long were you there?

THE COURT: Sir, I'm asking you. Did they admit him or do anything for him? What makes you believe that? I can report that I went to the hospital this afternoon and tell them, you know, "I'm George W. Bush" or something. What did they do for him?

MR. STOKES: Gave him some psychotropic medications.

THE COURT: What does that—you know, the rule says you have to have good reason to believe, and so what good reason do you have to believe, other than he reported over there? I mean, sir, first of all, it has to be in writing; have you done that?

MR. STOKES: I just got this this morning, Judge. I was not aware—I thought it was a drug issue, but I didn't·realize it was psychiatric until this morning when this was presented to me.

THE COURT: Well, sir whatever you know, things never change, do they? It has been eight months.

MR. MYERS [the prosecutor]: Same story, Judge.

THE COURT: Right. Anything else that you want to say on that issue?

MR. STOKES: Judge, this just says—this is from Lakeview Center. Therapist says, "Client came in for initial visit, very stressed, and was signing up for groups," and they gave him some medication.

THE COURT:  So.

MR. STOKES:  It just raises the issue.

THE COURT:  Does it raise the issue to you that you have a good reason?  Have you talked with these people, or he just went over there and said, "Hey, look, I'm stressed"?

MR. STOKES:  I can't answer that, Judge.

THE COURT:  I understand you can't answer it.  That's one of the reasons why I ask the question.

Anything else in relation to your motion for continuance?

MR. STOKES:  No, Your Honor.

THE COURT:  Denied.

(Ex. C1 at 171–73).

The state circuit court made the following oral findings of fact at the conclusion of the post-conviction evidentiary hearing:

First, my findings of fact.

There's no evidence that Mr. Stallworth was unable to communicate with his attorney.  He clearly communicated the alibi to his attorney, and he was able to—able to communicate back and forth with his attorney.  He understood what the role of the attorney was from his prior experience.  He, obviously, knew what the role of the state attorney was.  So there's no competent evidence that he didn't understand what the state attorney's role was, nor is there any competent evidence that he had no understanding of what the Judge's role was in the case.

The evidence is factually that he did have an understanding of the nature of the charges against him because that was the source of his stress. And so, clearly, he had an understanding of that. He had an understanding of what he was facing. He had an understanding of how the trial process worked. And—well, there's no evidence that he did not know how the trial process worked, and there's no evidence that he was unable to communicate with his counselor or the Court.

I don't think there's really any reason to go through all the other point by point determinations that a psychiatrist or psychologist would have to go through, but there's simply no evidence on any of the issues that Mr. Stallworth was unable to grasp the nature of the proceedings and what he was facing.

It's interesting that he would tell Lakeview one story and tell a completely different story to his counsel. I'm not quite sure what to make of that, but if we believe the—Mr. Stallworth, who spoke to Lakeview Center, he was merely a witness and had knowledge of who the true perpetrators were and yet he made a decision to keep that to himself and go to trial. If we believe Mr. Stallworth, who spoke to Mr. Stokes, Mr. Stallworth wasn't even in the state when the incident occurred, but clearly the jury disagreed.

And finding no evidence to support the claim of incompetence, the [Rule 3.850] motion is denied.

(Ex. C1 at 155–57).

The circuit court subsequently issued a final order denying Petitioner's Rule 3.850 motion (Ex. C1 at 160–65). The court adjudicated Claim Two as follows:

In this motion, Defendant claims ineffective assistance of trial counsel. Generally, to be entitled to relief based on a claim of ineffective assistance of trial counsel, a defendant must establish that counsel performed below an objective standard of reasonableness and

that, but for counsel's deficiency, a reasonable probability exists that the outcome of the trial would have been different. *See Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). "When a defendant fails to make a showing as to one prong, it is not necessary to delve into whether he has made a showing as to the other prong." *Evans v. State*, 946 So. 2d 1, 12 (Fla. 2006).

. . . .

**"Claim Two"**

Next, Defendant claims that counsel was deficient for failing to investigate Defendant's competency.  Defendant avers that he made counsel aware Defendant had a history of mental illness and was taking psychotropic medication, rendering Defendant unable to "concentrate, comprehend, make decisions and participate in his defense." Defendant concludes that he was not competent to stand trial.

As an initial matter, for counsel to be found deficient for failing to request a competency evaluation, Defendant must demonstrate that counsel had some indication that Defendant's competency was in question.  The test of competency is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *Lane v. State*, 388 So. 2d 1022 (Fla. 1980) (quoting *Dusky v. United States*, 362 U. S. 402, 402 (1960)).

First, as Defendant concedes, the record reflects that counsel asked for a continuance on the morning of jury selection because "there may be a competency issue." *See* attached trial transcript excerpts, pp. 5–7.  Counsel reported that Defendant had recently gone to Lakeview, a clinic for psychiatric treatment.  The Court inquired further and determined that a continuance was not warranted.

Additionally, the Court convened an evidentiary hearing on this matter, at which Defendant was present and represented by counsel.  At the hearing, Defendant's trial counsel, Ted Stokes, testified that on the numerous occasions he consulted with Defendant before trial,

> Defendant was able to discuss relevant facts specifically; and never seemed confused about what was happening or the charges against him. *See* evidentiary hearing transcript pp. 11–15. The Court finds Mr. Stokes to be credible.
>
> Furthermore, as the Court announced at the conclusion of the evidentiary hearing, Defendant's stress due to the pending charges against him demonstrates that he had an understanding of the charges he was facing and how the trial process worked. Defendant was able to communicate with both his attorney and the Court. Consequently, the Court finds that Defendant's attorney was not deficient for failing to argue more vigorously for a competency evaluation, especially after having requested a continuance, which was denied. *See Lawrence v. State*, 969 So. 2d 294, 313–314 (Fla. 2007). *See also Lamarca v. State*, 931 So. 2d 838, 847–848 (Fla. 2006). Defendant is not entitled to relief on this claim.

(Ex. C1 at 160–63). The First DCA affirmed the circuit court's decision without written opinion (Ex. C5).

In *Wilson v. Sellers*, — U.S. —, 138 S. Ct. 1188, 200 L. Ed. 2d 530 (2018), the Supreme Court held that where there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment or rejecting the same claim, federal habeas courts employ a "look through" presumption. The *Wilson* Court described this presumption as follows: "We hold that the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. *Id.* at 1192.

"Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011); *see also Gore v. Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing *Rice v. Collins*, 546 U.S. 333, 341–42, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")).  Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S. Ct. 843,74 L. Ed. 2d 646 (1983); *see also Baldwin v. Johnson*, 152 F.3d 1304, 1317 (11th Cir. 1998); *Smith v. Kemp*, 715 F.2d 1459, 1465 (11th Cir. 1983) ("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing.").  Questions of the credibility and demeanor of a witness are questions of fact.  *See Consalvo, supra* (citing *Freund v. Butterworth*, 165 F.3d 839, 862 (11th Cir. 1999) (en banc)).  "The deference compelled by the AEDPA requires that a federal habeas court more than simply

disagree with the state court before rejecting its factual determinations." *Nejad v. Attorney*, 830 F.3d 1280, 1292 (11th Cir. 2016) (internal quotation marks and citation omitted). Instead, "[i]n the absence of clear and convincing evidence, [courts] have no power on federal habeas review to revisit the state court's credibility determinations." *Id.* (emphasis in original) (citation omitted).

Here, Petitioner has not presented clear and convincing evidence that the state court's credibility determination with respect to Attorney Stokes' testimony was unreasonable. Therefore, this court accepts as credible Stokes' testimony that during his interactions with Petitioner, he observed no indication that Petitioner was confused or lacked the ability to comprehend and understand the proceedings. And nothing in the Lakeview Center records indicated that Petitioner could not effectively consult with Stokes, or that Petitioner could not understand the proceedings. Furthermore, upon Attorney Stokes' becoming aware that Petitioner went to Lakeview for mental health reasons, Stokes did, in fact, request a continuance to further investigate Petitioner's competency, but the trial court denied the request.

Considering these facts, the state post-conviction court reasonably concluded that Petitioner failed to show that Attorney Stokes (or the trial court, for that matter) was aware of facts sufficient to raise a bona fide doubt as to Petitioner's competency

at the time of trial.  Further, Petitioner proffered no evidence that if his competency had been further investigated, there is a reasonable probability an expert would have determined he was incompetent to proceed.  *See Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 479 (11th Cir. 2012) (holding that in order to establish *Strickland* prejudice based upon counsel's failure to request a competency hearing, a petitioner must show that "there was a reasonable probability that he would have received a competency hearing and been found incompetent had counsel requested the hearing.").

Petitioner has failed to demonstrate that the state court's adjudication of Ground Two was contrary to or an unreasonable application of *Strickland*, or based upon an unreasonable determination of the facts in light of the evidence presented. Therefore, Petitioner is not entitled to federal habeas relief on Ground Two.

C.    Ground Five:   "Trial counsel's multiple errors when viewed cumulatively denied defendant his right to a fair trial and effective assistance of trial [sic]."

In Ground Five, Petitioner contends the errors of defense counsel, when viewed cumulatively, denied him effective assistance of counsel, a fair trial, and due process of law (ECF No. 5 at 27; ECF No. 6 at 10–11).

Cumulative effect analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors. *See Morris v. Sec'y, Dep't of Corr,*,

677 F.3d 1117, 1132 (11th Cir. 2012) (cumulative error claim fails in light of the absence of any individual errors to accumulate); *United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004) (where no individual errors have been demonstrated, no cumulative errors can exist).

As discussed *supra*, three of the alleged errors of Petitioner's trial counsel are procedurally barred from federal review.  And as to the remaining claim, Ground Two, the state court reasonably determined that Petitioner failed to show he received ineffective assistance of counsel.  Petitioner's "cumulative effect" claim is thus without merit.

V.      CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  *Miller-El v.*

*Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting § 2253(c)(2)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S.—, 137 S. Ct. 759, 773, 197 L. Ed. 2d 1 (2017) (citing *Miller-El*, 537 U.S. at 327). The petitioner here cannot make that showing. Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That the amended petition for writ of habeas corpus (ECF No. 5) be **DENIED**.

2.     That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this <u>8th</u> day of July 2019.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**